# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

Civil Division

2021 JUN -8 P 12: 53

**21-C-0704**

CLERK OF COURT

|  |  |
|---|---|
| Veronica King | ) Case No. |
|  | ) _____ |
|  | ) *(to be filled in by the Clerk's Office)* |
| **Plaintiff(s)** | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) Jury Trial: *(check one)* ☐ Yes ☑ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
|  | ) |
|  | ) |
| State of Wisconsin Department of Corrections | ) |
| Racine Correctional Institution | ) |
| See Attached List of Defendants | ) |
|  | ) |
| **Defendant(s)** | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Veronica King |
| Street Address | 5518 34th Avenue |
| City and County | Kenosha/Kenosha |
| State and Zip Code | Wisconsin 53144 |
| Telephone Number | 262-652-0611 |
| E-mail Address | bestcheezcake@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Paul S. Kemper |
| Job or Title *(if known)* | Warden |
| Street Address | 2019 Wisconsin Street |
| City and County | Sturtevant/Racine |
| State and Zip Code | Wisconsin |
| Telephone Number | (262) 886-3214 |
| E-mail Address *(if known)* | Paul.Kemper@Wisconsin.gov |

Defendant No. 2

| | |
|---|---|
| Name | Steven R. Johnson |
| Job or Title *(if known)* | Warden |
| Street Address | 1015 N.10th Street |
| City and County | Milwaukee/Milwaukee County |
| State and Zip Code | Wisconsin 53233 |
| Telephone Number | (414) 212-3535 |
| E-mail Address *(if known)* | StevenR.Johnson@Wisconsin.gov |

Defendant No. 3

| | |
|---|---|
| Name | Christina J. Ettinger |
| Job or Title *(if known)* | Corrections Program Supervisor |
| Street Address | 2019 Wisconsin Street |
| City and County | Sturtevant/Racine County |
| State and Zip Code | Wisconsin 53177 |
| Telephone Number | (262) 886-3214 |
| E-mail Address *(if known)* | Christina.Ettinger@Wisconsin.gov |

Defendant No. 4

| | |
|---|---|
| Name | Annette M. Schubert |
| Job or Title *(if known)* | Human Resources Director-Advanced |
| Street Address | 2019 Wisconsin Street |
| City and County | Sturtevant/Racine County |
| State and Zip Code | Wisconsin 53177 |
| Telephone Number | (262) 886-3214 |
| E-mail Address *(if known)* | AnnetteM.Schubert@Wisconsin.gov |

Defendant No. 5
Name                                    Audrian S. Brown
Job or Title (if known)                 Unit Manager
Street Address                          2019 Wisconsin Street
City and County                         Sturtevant/Racine County
State and Zip Code                      Wisconsin 53177
Telephone Number                        (262) 886-3214
E-mail Address (if known)               Audrian.Brown@Wisconsin.gov

Defendant No. 6
Name                                    Robin Diebold
Job or Title (if known)                 Unit Manager
Street Address                          2019 Wisconsin Street
City and County                         Sturtevant/Racine County
State and Zip Code                      Wisconsin 53177
Telephone Number                        (262) 886-3214
E-mail Address (if known)               Robin.Diebold@Wisconsin.gov

Defendant No. 7
Name                                    Rhondi S. Dorshort
Job or Title (if known)                 Equal Employment Prog. Specialist-Senior
Street Address                          3033 E. Washington Avenue
City and County                         Madison/Dane County
State and Zip Code                      Wisconsin
Telephone Number                        (608) 240-5469
E-mail Address (if known)               Rhondi.Dorshort@Wisconsin.gov

Defendant No. 8
Name
Job or Title (if known)
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address (if known)

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | State of Wisconsin - Department of Corrections |
| Street Address | 2019 Wisconsin Street |
| City and County | Sturtevant/Racine County |
| State and Zip Code | Wisconsin 53177 |
| Telephone Number | (262) 886-3214 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

{29 U.S.C. 794}, Section 504 of the Rehabilitation Act of 1973

☑    Relevant state law *(specify, if known)*:

State of Wisconsin Fair Employment Act

☐    Relevant city or county law *(specify, if known)*:

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☑ Termination of my employment.

☐ Failure to promote me.

☑ Failure to accommodate my disability.

☑ Unequal terms and conditions of my employment.

☑ Retaliation.

☑ Other acts *(specify)*:    Failure to adhere to known medical restrictions.

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

October 2, 2013 through December 15, 2017

C.    I believe that defendant(s) *(check one)*:

☐ is/are still committing these acts against me.

☑ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑ race                    Black

☑ color                   Black

☐ gender/sex

☐ religion

☐ national origin

☐ age *(year of birth)*                    *(only when asserting a claim of age discrimination.)*

☑ disability or perceived disability *(specify disability)*

Rheumatoid Arthritis of Multiple Sites/Osteoarthritis

E.    The facts of my case are as follows.  Attach additional pages if needed.

See Attached Pages

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Numerous State of WI Dept. of Workforce Development - Equal Rights Division Complaints have been filed against the WI Dept. of Corrections from May 2015 to the Present. A Current Case is Pending.

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*    03/19/2021        .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Re-instatement to the position of Social Worker-Senior Substance Use Disorder with all back wages, benefits and compensatory damages. Punitive damages for joint (s) damage caused by the failure to accommodate, pain and suffering caused by the failure to accommodate, the physical and emotional suffering caused by the inflammatory racial slur "an orangutan can run a group" made by Christina J. Ettinger, and the physical and emotional suffering caused by the retaliatory actions of the Wisconsin Dept. of Corrections. The Wisconsin Dept. of Corrections repeatedly ignored the medical restrictions, accommodations, temperature restrictions, and ergonomic-related assistance tools needed to remain in the workplace. No employee should ever be compared to an animal, let alone a jungle beast. The racial slur was confirmed twice by two different decision makers.

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  6/8/2021

Signature of Plaintiff

Printed Name of Plaintiff  Veronica King

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF WISCONSIN
## CIVIL DIVISION

**Veronica King,**
**Petitioner**

v.

**State of Wisconsin**                          **Court Case Number:**
**Department of Corrections**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### Introduction

The Petitioner comes before the United States District Court for the Eastern District of

Wisconsin with a Complaint for Employment Discrimination on the basis of Disability, Race,

Hostile Work Environment, and Retaliation. The State of Wisconsin Department of Corrections

engaged in a pattern of disability discrimination, racial discrimination, hostile work environment,

and retaliatory action. The Wisconsin Department of Corrections has known since October 2,

2013, that the Petitioner suffered from Rheumatoid Arthritis. Board Certified Physicians with

specialties in Rheumatology, Orthopedics, and Podiatry repeatedly informed the Wisconsin

Department of Corrections of the Petitioner's medical disabilities, restrictions and

accommodations. In addition, a Certified Independent Medical Examiner evaluated the

Petitioner on August 1, 2016, and agreed with all the medical diagnoses, medications, restrictions

and accommodations the Petitioner 's team of medical providers had determined to be medically

necessary. Despite having years of medical documentation and accommodations, the Wisconsin

Department of Corrections repeatedly continued to engage in disability discrimination until the Petitioner's employment ended on December 15, 2017.

On December 30, 2020, a Petition for Judicial Review was filed in Kenosha County Circuit Court. A Petition for Judicial Review was filed due to the numerous errors made by the State of Wisconsin Labor & Industry Review Commission. The case has been assigned to Honorable Bruce E. Schroeder – Branch 3. A Virtual Hearing was held on March 16, 2021, and Honorable Judge Bruce E. Schroeder hasn't schedule any further hearings. Honorable Judge Bruce E. Schroeder has failed to schedule additional hearings or render a decision regarding the Petition for Judicial Review. This left the Petitioner with no other options but to file the current Complaint in U. S. District Court within 90 days of the Right to Sue Letter issued by the U.S. Equal Employment Opportunity Commission on March 16, 2021.

On November 19, 2020, the State of Wisconsin Labor & Industry Review Commission rendered the Fair Employment Decision regarding ERD Case No. CR201604909 & CR201701571. The State of Wisconsin Labor & Industry Review Commission affirmed the State of Wisconsin Department of Workforce Development Equal Rights Division Administrative Law Judge determination that the racial slur **"an orangutan can run a group"** was made by Corrections Program Supervisor, Christina J. Ettinger. A considerable number of errors were made by the State of Wisconsin Labor & Industry Review Commission, and a significant amount of the Complainant's medical records were ignored. **The State of Wisconsin Labor & Industry Review Commission ruled that there was no pattern of racial harassment when in fact the Complainant had previously filed ERD Complaints that included Race Discrimination**. The State of Wisconsin Department of Corrections had settled five prior ERD Complaints on September 28, 2016, that included race discrimination complaints. Also, the State of Wisconsin Department of Corrections has been sued previously for a Caucasian female supervisor making an insensitive racial comment

2

to other African American female staff. With the current case(s), this constitutes a pattern of behavior allowed by Paul S. Kemper, Warden at the Racine Correctional Institution. **There is significant federal case law that supports one racial slur made by a supervisor can constitute a hostile work environment and race discrimination in the workplace**.

State of Wisconsin Labor & Industry Review Commission relied heavily on the Independent Medical Examination conducted by Dr. Brian D. Harrison, M.D., CIME, but failed to determine that the majority of the disability discrimination had occurred before Dr. Harrison, MD, CIME evaluated the Complainant on August 1, 2016. The Complainant's medical professionals had provided the State of Wisconsin Department of Corrections with numerous Medical Accommodation Requests, Fitness for Duty Forms, other documentation to support the accommodations requested. The State of Wisconsin Department of Corrections repeatedly ignored the permanent restrictions, accommodation requests, and medical conditions the Complainant's medical professionals submitted to the Wisconsin Department of Corrections.

## Race Discrimination:

On April 3, 2017, Corrections Program Supervisor Christina J. Ettinger had a brief meeting with AODA Social Worker Mary Conner-Menarek. During this meeting, Christina J. Ettinger made the insensitive racial slur **"an orangutan can run a group."** This racist comment was made concerning the Petitioner's group facilitation skills. AODA Social Worker Mary Conner-Menarek recognized the comment as racist and informed the Petitioner that Christina J. Ettinger made the insensitive racial slur in a meeting between the two of them. The Complainant reported the insensitive racial slur to the Wisconsin Department of Corrections administration at the Racine Correctional Institution. The Complainant considered the racial slur to be intentional, deliberate,

and malicious. The Petitioner had just returned to work from a Family Medical Leave Act on March 20, 2017, following the surgical correction of the Petitioner's right foot.

**The State of Wisconsin Labor & Industry Review Commission affirmed the Administrative Law Judge's finding that the comment "an orangutan can run a group" was made.** The Commission claimed no evidence was presented that the comment was part of a pattern of racially hostile conduct. The State of Wisconsin Labor & Industry Review Commission wrote: *This single isolated incident without more, is inadequate to establish a racially hostile work environment. For this reason, the commission finds that the Complainant failed to establish that the respondent discriminated against her based on race.* Dr. Ashokkumar Shah, MD the Complainant's psychiatrist completed the Complainant's Department of Corrections Fitness for Duty Form dated July 27, 2017 and wrote, **"Patient is afraid of the supervisor."** Dr. Shah, MD removed the Complainant from the workplace due to the emotional and physiological symptoms the Complainant was suffering from due to the racial slur.

The State of Wisconsin Labor & Industry Review Commission is incorrect in stating there was no pattern of racially hostile conduct. The Complainant had previously filed **five** State of Wisconsin Workforce Development – Equal Rights Division Complaints against the Wisconsin Department of Corrections which included Race Discrimination. **Equal Rights Division Case No. CR2015003217 included Race Discrimination against Corrections Program Supervisor Christina J. Ettinger.** The Wisconsin Department of Corrections settled this Complaint along with four other Equal Rights Division Cases with a Settlement Agreement signed on September 28, 2016. The State of Wisconsin Labor & Industry Review Commission ignored the Settlement Agreement in their decision, yet it was included as an Exhibit. The Wisconsin Department of Corrections agreed to restore the Complainant's Sick Leave that was lost (185.5 Hours), no discipline was

4

issued for the Rule Violations Christina J. Ettinger accused the Complainant of violating. Christina J. Ettinger could not be a reference for the Complainant in employment endeavors. Christina J. Ettinger's actions regarding Employee Training would be reviewed by Warden Kemper and Human Resources Director Annette Schubert to ensure the Complainant was treated fairly. The Settlement Agreement addressed the racial and disability discrimination Christina J. Ettinger subjected the Complainant to and Warden Paul Kemper condoned.

African American women at the State of Wisconsin Department of Corrections – Racine Correctional Institution were continuously subjected to racial discrimination by Caucasian female supervisors. Complaints have been filed with the U.S. Equal Employment Opportunity Commission, U.S. Department of Justice – Americans With Disabilities Act, and the State of Wisconsin Department of Workforce Development – Equal Rights Division. These cases are *Felica Brown v. Wisconsin Department of Corrections, United States District Court Eastern District of Wisconsin*, Case No. 15-CV-843-PP (E.D. Wis. Sep. 20, 2016), and *Camilla Selmon v. Wisconsin Department of Corrections, Wisconsin Eastern District Court*, (2)15-cv-00977). **Susan Nygren, Health Unit Manager told Phlebotomists Felicia Brown, "your glasses won't stay on your face because Black people are born with flat noses."** Camilla Selmon witnessed the harassment Felicia Brown received and was retaliated against (terminated) for participating in the internal investigation involving Susan Nygren, Health Unit Manager. In 2011, Corrections Treatment Specialist Marlo Harmon filed a State of Wisconsin Department of Workforce Development – Equal Rights Complainant against Christina J. Ettinger due to racially discriminatory practices she was engaging in. How many African-American women filing Complaints of Race Discrimination does it take for the State of Wisconsin Labor & Industry Review Commission to determine there is a pattern?

5

The current cases constitute additional examples of State of Wisconsin Department of Corrections – Racine Correctional Institution African-American women being subjected to a **racial slur** made by a Caucasian female supervisor under the leadership of Paul S. Kemper, Warden. **The previous racial slur made by Susan Nygren was "your glasses won't stay on your face because Black people are born with flat noses." Primates such as an ape, baboon, chimpanzee, gorilla, monkey, and orangutan all have flat noses. There is a direct correlation between the previous racial slur and the current racial slur made by Caucasian female supervisors under the leadership of Paul S. Kemper, Warden. This constitutes a pattern that the State of Wisconsin Labor & Industry Review Commission fails to accept.**

The State of Wisconsin Labor & Industry Review Commission deliberately and maliciously failed to consider the Settlement Agreement, which was signed on September 28, 2016, that included numerous discriminatory actions on the part of Christina J. Ettinger and Paul S. Kemper, Warden between 2014 – 2016. From July 9, 2014 through October 4, 2017, Christina J. Ettinger had continuously engaged in discriminatory practices regarding the Complainant. Numerous State of Wisconsin Department of Workforce Development Equal Rights Complaints and State of Wisconsin Employee Grievances had been filed regarding the actions of Christina J. Ettinger. Warden Paul Kemper allowed and condoned her behavior and actions but agreed to sign the Settlement Agreement due to the amount of evidence stacked against the Wisconsin Department of Corrections which included documentation from the U.S. Department of Justice – Washington, DC and the U.S. Equal Employment Opportunity Commission – Washington, DC and Chicago District Office.

Based on the case-law cited below which was included in the Complainant's Petition to the State of Wisconsin Labor & Industry Review Commission and the Brief provided to the

6

Administrative Law Judge, there is no excuse for the State of Wisconsin Labor & Industry Review Commission to ignore the fact that one isolated racial slur can constitute a hostile work environment based on race. How many African American employees of the Wisconsin Department of Corrections – Racine Correctional Institution have to report insensitive racial slurs made by Caucasian female supervisors before the State of Wisconsin Labor & Industry Review Commission recognizes there is a serious problem? How many times do African American employees have to be compared to primates before the State of Wisconsin Labor & Industry Review Commission recognizes a pattern of being referred/compared to apes, baboons, chimpanzees, gorillas, monkeys, and orangutans?

**Daniel v. T&M Protection Resources, LLC, 15-560-CV (2nd Cir. April 25, 2017).** In this case, the supervisor's other conduct included likening him to a gorilla was addressed. *"To suggest that a human being's physical appearance is essentially a caricature of jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme."* The Second Circuit reiterated that a plaintiff in a discrimination case may use facially neutral conduct to support a harassment claim. Specifically, when the same person "engaged in multiple acts of harassment, some overtly [based on a protected characteristic] and some not," then all acts can be considered to decide whether illegal harassment occurred. *Daniel,* 2017 WL 1476598, at *2. Finally, the Second Circuit overruled the District Court's decision that Daniel had failed to allege sufficient incidents of harassment to support a hostile work environment claim.

The Supreme Court provides that whether a work environment is hostile or abusive must be reviewed by **"looking at all the circumstances" of the environment**, which includes:

- the frequency of the discriminatory conduct;
- the severity of the conduct;

7

- whether it is physically threatening or humiliating, or a mere offensive utterance;

- whether it unreasonably interferes with an employee's work performance

Instead, in evaluating the severity of the one-time slur at issue, the Court asserted that "' perhaps *no single act* can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates.'"

**William Fisher, Plaintiff-Appellant Cross-Appellee v. Lufkin Industries, Incorporated, Defendant-Appellee Cross-Appellant No.15-40428 (5th Cir. February 10, 2017)**

A Title VII retaliation plaintiff must establish that (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. We (Court) explained that such a plaintiff must produce sufficient evidence that "(1) *his ... supervisors, motivated by retaliatory animus, took acts intended to cause an adverse employment action."*

*Boyer-Liberto v. Fontainebleau Corp.***, 2015 WL 2116849 (4th Cir. May 7, 2015)**

A **single incident** of severe verbal harassment can be sufficient to establish a hostile working environment. *The court observed that an "extremely serious" isolated incident of harassment can create such an environment.* In measuring the severity of the conduct, the court stated that, **due to a supervisor's power and authority, a racial epithet used by a supervisor would impact the work environment far more severely than if it was uttered by a co-worker**.

**Walker v. Thompson 214 F. 3rd 615,626 (5th Cir. 2000)**

The triable issue was raised concerning a hostile work environment where, inter alia, supervisors

verbally assailed African American employees with physically humiliating comparisons to

"monkeys" and "slaves". We are not persuaded that the appellees have shown as a matter of

law that they exercised reasonable care in correcting the racially harassing behavior. Based on

the above-alleged facts, we conclude that the appellees have **failed to demonstrate** as a matter

of law the first element of the defense, i.e., "that the employer exercised reasonable care to

prevent and correct promptly any [racially] harassing behavior."

### Coverage of the Ozaukee Unit - Working in Cold Temperatures & No Climbing:

Dr. Rosanne Ranieri, MD had been the Complainant's Primary Care Physician from

October 2010 to August 2017. In March 2013, Dr. Ranieri, MD was the first physician to inform

the Wisconsin Department of Corrections that the Complainant suffered from Hypothyroidism

and Arthritis. Dr. Ranieri, MD wrote a written request for the Complainant to have a space

heater in her office due to the Complainant's diagnoses. The Complainant provided the

Wisconsin Department of Corrections with the written request. The Wisconsin Department of

Corrections refused to grant the accommodation request. Dr. Ranieri, MD is the physician who

referred the Complainant to Dr. Robina Chowdhery, MD due to the changes in the

Complainant's right hand.

Dr. Robina Chowdhery, MD has been the Complainant's Rheumatologist since August 1,

2013. On October 2, 2013, Dr. Chowdhery, MD diagnosed the Complainant with Rheumatoid

Arthritis. The Wisconsin Department of Corrections was informed in writing that the

Complainant's condition was considered long-term or permanent. **Dr. Chowdhery, MD**

**completed the State of Wisconsin Department of Corrections Disability Accommodation**

9

Request Form on October 2, 2013, making the Wisconsin Department of Corrections aware of the following permanent restrictions and accommodations: a). Decrease walking to the office, b). Ergonomics for desk work, c). Decrease opening and locking doors, and d). Space heater in office as cold increases arthritis pain. Dr. Robina Chowdhery, MD was the second physician to ask the Wisconsin Department of Corrections to provide the Complainant with a space heater for her workspace.

On January 15, 2014, Dr. Robina Chowdhery, MD again completed and provided the Wisconsin Department of Corrections with a Fitness for Duty Form with a permanent restriction of No Exposure to Extreme Temperatures and Side Effects of Medications. Dr. Robina Chowdhery, MD requested the restriction of Close Proximity for Parking due to medical condition, and a work environment with a temperature of 60-80 Degrees optimal. Human Resources Director Annette Schubert received this document along with the Complainant's Family Medical Leave Act (FMLA) documentation for 2014. The FMLA was processed, but Annette Schubert ignored the No Exposure to Extreme Temperatures and Side of Effects of Medications restrictions. It took 11 months and a State of Wisconsin Employee Grievance before Annette Schubert addressed the restrictions. After 11 months, the Wisconsin Department of Corrections agreed to hold the Interactive Meeting that should have occurred in January 2014 on December 5, 2014. The Complainant's Accommodation Request was granted. This was a violation of the State of Wisconsin Department of Corrections Executive Directive #8 – Reasonable Accommodation, Section D. – Employee is to receive written notification of the decision of accommodation within 10 business days. The State of Wisconsin Labor & Industry Review Commission completely ignored this violation, yet this issue was raised in the Probable Cause Hearing, the Exhibits for the Hearing, as well as the Transcript of the Hearing.

In December 2015, the Wisconsin Department of Corrections decided to disregard the Permanent Restrictions of Dr. Robina Chowdhery, MD by requiring the Complainant to cover ½ of the Ozaukee Unit. These permanent restrictions included No Exposure to Extreme Temperatures, Ergonomic Workspace, Space Heater in the workspace, Chair Cushion, Voice Recognition Software, and Workspace near the washroom due to digestive upsets. **The Ozaukee Unit Social Worker's Office was not an ergonomic workspace for the Complainant. None of the Complainant's restrictions and accommodations were accommodated on the Ozaukee Unit. Also, the Complainant had a no climb, no run, no squat, and occasional reaching restrictions. The Complainant was responsible for covering ½ of the Ozaukee Unit inmates from December 18, 2015, to April 28, 2016.** The State of Wisconsin Labor & Industry Review Commission was very much aware that the Complainant had to leave her ergonomic workspace on the Dane Unit and report the Ozaukee Unit which is located clear across the correctional institution grounds. This violated all of Dr. Robina Chowdhery, MD's restrictions and accommodations that had previously been approved. The Ozaukee Unit had approximately 15 stairs from the ground floor to the Officer's Station. The Complainant had a permanent No Climb restriction in place the entire time the Complainant covered the Ozaukee Unit. The only way to get from the ground floor to the Officer's Station was to climb the stairs. There is no elevator in the Ozaukee Unit. This caused shortness of breath and further damage to the Complainant's hips and deformed feet. The Ozaukee Unit had no space heater, no ergonomic mouse, no voice recognition software installed on the computer, the office desk was too high for the Complainant, the office chair was too high for the Complainant, no chair cushion for the office chair, and the office was too cold for Complainant to work in. These violations were disregarded by the State of Wisconsin Labor & Industry Review Commission despite the medical

documentation provided during the Probable Cause Hearing and documentation the Wisconsin Department of Corrections had in their possession.

**The State of Wisconsin Labor & Industry Review Commission included in their decision that the Complainant didn't make the State of Wisconsin Department of Corrections aware of their violations. This was inaccurate information.** The Complainant requested and met with Paul S. Kemper, Warden, and Annette Schubert, Human Resources Director in January 2016, and made them aware of the violations they were engaging in. Annette Schubert sent out an email dated January 7, 2016, spelling out the permanent restrictions Dr. Robina Chowdhery, MD listed on a Fitness for Duty Form dated January 6, 2016. The No Run, No Climb, and No Squat were listed. On February 25, 2016, the Complainant met with Paul S. Kemper, Warden again regarding the Ozaukee Unit. Warden Kemper was verbally told that the Waukesha Unit was more accessible for the Complainant than the Ozaukee Unit and eliminated the Complainant from being exposed to Extreme Temperatures because she could enter the Waukesha Unit from the Administrative Building without going outside. On March 1, 2016, the Complainant had an Arthritis Study completed at Froedtert South – Kenosha Medical Center. The Arthritis Study revealed the Complainant's hands and feet had worsened since August 2013. On March 9, 2016, Warden Paul Kemper ordered me to produce my evidence that Christina Ettinger was treating me unfairly, being unethical, and discriminatory towards me. On April 1, 2016, Christina J. Ettinger was made aware that her expectations she provided the Complainant violated the Complainant's restrictions and accommodations. On April 8, 2016, an Incident Report was completed after Unit Manager Robin Diebold called the Ozaukee Unit to see if the Complainant had been showing up. Again, the Wisconsin Department of Corrections was made aware that the Ozaukee Unit violated the restrictions and accommodations that were previously in place.

On April 15, 2016, Annette Schubert was reminded again that the Ozaukee Unit violated the restrictions and accommodations that were in place. The Complainant didn't see Dr. Brian D. Harrison, MD, CIME until August 1, 2016. All the violations had occurred between December 18, 2015, and April 28, 2016. On April 28, 2016, Annette Schubert sent an email to Christina J. Ettinger informing her to inform the Complainant that a space heater was available in Unit Manager Robin Diebold's Office. Robin Diebold's office is locked at all times, and the Complainant didn't have access to the space heater. which is locked at all times. Both the State of Wisconsin Department of Corrections and the Labor & Industry Review Commission takes no responsibility for the blatant violations that occurred between December 18, 2015, and April 28, 2016.

On August 1, 2016, the Complainant was examined by Dr. Brian D. Harrison, MD, CIME at the request of the Wisconsin Department of Corrections. **Dr. Brian D. Harrison, MD, CIME was provided all of the Complainant's medical records, restrictions, and accommodations. It was Dr. Brian D. Harrison, MD, CIME who stopped the Wisconsin Department of Corrections from exposing the Complainant to extreme temperatures by limiting the Complainant's exposure to cold temperature to twice per day (From Complainant's car to the Complainant desk, and the Complainant's car from the Complainant's desk).** This prevented the Wisconsin Department of Corrections from subjecting the Complainant to extreme temperatures. Unfortunately, the Wisconsin Department of Corrections had already violated Dr. Robina Chowdhery, MD's restrictions and accommodations before the Complainant could see Dr. Brian D. Harrison, MD, CIME. Also, Dr. Brian D. Harrison, MD, CIME restricted the Complainant's reaching due to the permanent damage done to the right shoulder, and the Complainant's feet being deformed from the Rheumatoid Arthritis. On-Page 17 - Item #5 Dr. Brian D. Harrison wrote "**I support**

**13**

**restrictions made thus far**, which include a motorized scooter for travel on the campus of the correctional institution." "**Accommodations Ms. King had made to remain in her office through the day and minimize travel also have medical support**." On August 24, 2016, the Wisconsin Department of Corrections tried to get Dr. Brian D. Harrison, MD, CIME to adjust his permanent restrictions and accommodations, but Dr. Brian D. Harrison, MD, CIME stood firm on the exposure to extreme temperatures and not allowing the Wisconsin Department of Corrections to change his medical decision.

## Whiteboards

The Complainant submitted a Reasonable Accommodation Request on January 10, 2017, requesting the whiteboard in Group Room 4 be lowered to accommodate the Complainant's reaching restrictions and Rheumatoid Arthritis of the Feet/Ankles. Per the State of Wisconsin Department of Corrections Executive Directive #8 – Reasonable Accommodation, the Wisconsin Department of Corrections is required to provide the Employee with a written decision regarding the request within 10 business days. The Wisconsin Department of Corrections had Dr. Brian D. Harrison, MD., CIME report that spelled out the conditions of the Complainant's feet, hands, hips, and shoulder. On January 30, 2017, the Complainant provides Annette Schubert, Human Resources Director an email providing the measurements of the Whiteboard in Group Room 4 as well as the Complainant's height information of 4' 11". The Wisconsin Department of Corrections didn't approve the Accommodation Request until June 12, 2017. This violated the Time Limits spelled out in Executive Directive #8 – Reasonable Accommodation, which gives the Wisconsin Department of Corrections 10 business days to notify the Complainant of the decision to approve or deny.

The Complainant resumed facilitating group therapy to correctional inmates on April 18, 2017, yet the Whiteboard never was lowered, and the Complainant didn't have the approved self-adhesive flipchart paper. The Complainant had limitations in reaching due to the permanent restriction regarding the shoulder, and the recent surgical correction of the right foot. The Wisconsin Department of Corrections and the Labor & Industry Review Commission failed to review the documentation and determine that Dr. Michael J. Nute, DPM had reduced the Complainant's lift, carry, pull restrictions to 10 lbs. from Dr. Brian D. Harrison, MD, CIME 20 lbs. due to the surgical correction of the right foot and pending left foot surgery. This left the Complainant unable to move furniture, easels, and other items needed for group therapy due to the 10 lbs. restriction. Lowering the Whiteboard would allow the Complainant to use the Whiteboard without moving furniture and other items for group therapy sessions. The Wisconsin Department of Corrections never lowered the Whiteboard, yet the Complainant continued to have a 10 lbs. weight restriction put in place by Dr. Michael J. Nute, DPM as he had surgically corrected the right foot, and was pending the surgical correction of the left foot. The Wisconsin Department of Corrections and the Labor & Industry Review Commission both ignored Dr. Nute's restrictions. Also, the Wisconsin Department of Corrections provided the Complainant with false information by promising to make accommodation and failing to provide the accommodation. This is a violation of the U.S. Department of Justice – Americans with Disabilities Act, U.S. Equal Employment Opportunity Commission, and the Rehabilitation Act of 1973.

## Time Limits

The State of Wisconsin Labor & Industry Review Commission repeatedly ignored the Time Limits Violations with regards to the State of Wisconsin Department of Corrections –

1 5

Executive Directive #8 Reasonable Accommodations. Throughout the Probable Cause Hearing the Wisconsin Department of Corrections was repeatedly asked why the Time Limits were violated. Per Executive Directive #8, and employee shall receive a response to a written request for accommodation within ten business days. Dr. Robina Chowdhery's Fitness for Duty Form clearly stating Permanent Restriction of No Exposure To Extreme Temperatures and Side Effects of Medication was submitted to the Wisconsin Department of Corrections on January 15, 2014 along with the Complainant's FMLA paperwork for 2014. Human Resources Director Annette Schubert failed to address this issue until December 5, 2014. It took eleven months for the Wisconsin Department of Corrections to address this matter. In addition, it took a State of Wisconsin Employee Grievance to make Annette Schubert address the matter. Two months later, Annette Schubert was negligent again and missed Dr. David Hamming, MD restrictions on both hands. This negligence resulted in the Complainant having 44.5 Hours of Sick Leave restored through a Settlement Agreement because Annette Schubert was negligent.

Gordon Satorius, Complainant v. State of Wisconsin Dept. of Corrections, Respondent ERD Case No. CR20131969 and EEOC Case No. 26G20131173C addresses the Wisconsin Department of Corrections – Executive Directive #8 Reasonable Accommodations. Gordon Satorius was determined to be an employee with a disability due to migraine headaches. He had a reasonable accommodation in place for years until a new Deputy Warden no longer allowed it. Gordon Satorius used vacation time from Summer 2006 to early 2009 to maintain his 4-day work week which the WI Dept. of Corrections refused to continue as a Reasonable Accommodation. Labor & Industry Review Commission agreed with the Complainant that allowing him to take FMLA leave was not a reasonable accommodation, since it required him to draw down his accumulated sick leave as a condition of remaining employed.

16

Based on the above, *the Labor & Industry Review Commission is not persuaded that accommodating the complainant by allowing him to continue working a schedule of four ten-hour days, with either Fridays or Mondays off, would have presented a hardship for the respondent, and it concludes that the evidence warrants a finding of probable cause to believe the respondent violated the statue by denying him that accommodation*. It is clear that DOC ED #8 Time Limits is 10 business days. EEOC Timeframes for Reasonable Accommodation is also 10 business days.

On January 5, 2017, Annette Schubert was provided the 2017 FMLA Paperwork completed by Dr. Robina Chowdhery, MD. Dr. Chowdhery, MD requested self-adhesive flipchart paper as an accommodation on that paperwork. On January 10, 2017, the Complainant submitted a Reasonable Accommodation Request. The Wisconsin Department of Corrections didn't provide the Complainant a copy of the Accommodation Request until June 12, 2017. Once again, Annette Schubert failed to comply with the Time Limits outlined in Executive Directive #8. This constitutes a pattern of negligence on the part of Human Resources Director, Annette Schubert. The State of Wisconsin Labor & Industry Review Commission deliberately, intentionally, and maliciously failed to address these violations on the part of the Wisconsin Department of Corrections. Time Limits are address under the Americans With Disabilities Act and the U.S. Equal Employment Opportunity Commission.

## Retaliation

Numerous State of Wisconsin Employee Grievances, State of Wisconsin Department of Workforce Development – Equal Rights Division Complaints and U.S. Department of Justice – Americans with Disabilities Act Complaints had been filed against the Wisconsin Department of

Corrections by the Complainant for race discrimination, disability discrimination, and retaliation. The Wisconsin Department of Corrections settled six Complaints on September 28, 2016. The Complainant had 185.5 Hours of Sick Leave restored due to disability discrimination, refused training opportunities, racial differences, and discriminatory discipline not issued. Christina J. Ettinger could not be a reference for the Complainant because she could not be trusted. The Complainant's training requests went through Annette Schubert and Warden Paul S. Kemper because Christina J. Ettinger couldn't be trusted to be fair and consistent in approving Training Request for the Complainant.

In October 2015, Paul S. Kemper, Warden declared the Complainant unfit for duty after Dr. Robina Chowdhery, MD requested some temporary restrictions. The Complainant reported Warden Kemper to the U.S. Department of Justice – Americans With Disability Act Compliance Center. Both the U.S. Department of Justice and the U.S. Equal Employment Opportunity Commission help the Complainant get back to work. Both Christina J. Ettinger and Warden Kemper had violated the Complainant's medical restrictions and accommodations and failed to abide by the rules that govern FMLA. The Complainant determined these actions to be racially motivated as well. This action angered Warden Kemper and he began a long period of retaliatory actions.

On April 28, 2016, Paul S. Kemper, Warden declared the Complainant unfit for duty for a second time after Dr. Robina Chowdhery, MD requested some permanent restrictions. Warden Kemper ordered an Independent Medical Examination. On August 1, 2016, the Complainant was examined by Dr. Brian D. Harrison, MD, CIME. Dr. Harrison, MD, CIME sent the Complainant back to work with the same restrictions Dr. Robina Chowdhery, MD had in place for all along. Dr. Harrison, MD, CIME found some additional limitations the Complainant had that the

18

Complainant's physicians had not found. This again angered Warden Kemper because for a second time he was unable to remove the Complainant from the workplace due to disability.

On March 30, 2017, Warden Paul Kemper provided the Complainant with a Letter of Professional Reference that was requested as part of the Settlement Agreement signed on September 28, 2016. This letter was provided to the Complainant just four days before Christina J. Ettinger's insensitive racial slur, "an orangutan can run a group." Deputy Warden Steven R. Johnson was made aware of the racial slur and had the obligation to initiate the investigation proceedings regarding the racial slur. **Deputy Warden Johnson testified at the Probable Cause Hearing stating, "I dropped the ball." "Ms. King and I did have a conversation regarding the racial slur in April 2017."** While Deputy Warden Johnson had dropped the ball, Christina J. Ettinger proceeded to conduct a performance evaluation of the Complainant on May 8, 2017, in which she wrote an inaccurate performance evaluation in retaliation for the Complainant coming forward with the insensitive racial slur. **Close temporal proximity was raised in the Probable Cause Hearing and the Post Hearing Brief that the State of Wisconsin Labor & Industry Review Commission ignored**. Warden Kemper's Letter of Professional Reference was written on March 30, 2017. On April 3, 2017, Dr. Autumn Lacy and Ms. Allison Nebl determined the Complainant didn't need any additional training which was the complete opposite of Christina J. Ettinger's opinion of the Complainant's group facilitation skills. When Christina J. Ettinger received word on April 3, 2017, that Dr. Autumn Lacy and Ms. Allison Nebl disagreed with her assessment of the Complainant; Christina J. Ettinger proceeded to speak with AODA Social Worker Mary Conner-Menarek and made the deliberate, intentional, insensitive racial slur, "an orangutan can run a group."

In April 2017, Paul S. Kemper, Warden failed to initiate an immediate investigation of Christina J. Ettinger's racial slur "an orangutan can run a group." He failed to request the Wisconsin Department of Corrections Office of Special Investigations Unit investigate because this is the same Unit that investigated Susan Nygren, Health Unit Manager when she harassed two other African American women at the Racine Correctional Institution. Susan Nygren made the statement to Felicia Brown, **"your glasses won't stay on your face because Black people are born with flat noses."** Warden Kemper didn't want the Office of Special Investigation to investigate another member of his leadership team for yet another racial slur. Warden Kemper waited until Department of Corrections Secretary Jon E. Litscher disbanded the Office of Special Investigations in May 2017, before he would initiate the investigation of Christina J. Ettinger's racial slur. The Complainant filed a State of Wisconsin Department of Workforce Development – Equal Rights Division Complaint to have the racial slur addressed. **Both the Administrative Law Judge and the Wisconsin Labor & Industry Review Commission determined the racial slur was made. Warden Kemper failed to issue any discipline to Christina J. Ettinger for making the racial slur.**

In September 2017, Paul S. Kemper, Warden was asked to release the discipline issued to Christina J. Ettinger through a State of Wisconsin Open Records Act. Warden Kemper had sent Christina J. Ettinger a letter on August 8, 2017, stating the Investigation regarding her racial slur had been closed with no further action warranted. Warden Kemper failed to comply with the Open Records Request. **The Complainant sought a Writ of Mandamus from the Racine County District Attorney, Patricia Hansen. This again angered Warden Kemper as he was forced to release the requested information or have to answer to Racine County District Attorney Patricia Hansen.** Warden Kemper tried to protect Christina J. Ettinger, but the Administrative

Law Judge and the Labor & Industry Review Commission determined she made the racial slur. **This means Christina J. Ettinger lied during the Employee Hearing she was subjected to through the Wisconsin Department of Corrections, and she lied under oath in the Probable Cause Hearing before the Administrative Law Judge.**

### Eleventh Amendment of the U.S. Constitution – Sovereign Immunity

Congress enacted 42 U.S.C. 2000d-7 as part of the Rehabilitation Act Amendments of 1986, Pub. L. No. 990506, Title X, § 1003(a), 100 Stat. 1845. Section 200d-7(a) provides: **A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 {29 U.S.C. 794}**, title IX of the Education Amendments of 1972 {20 U.S.C. 1681 et seg.}, the Age Discrimination Act of 1975 {42 U.S. C. 6101 et seq.}, title VI of the Civil Rights Act of 1964 {42 U.S.C. 2000d et seq.}, **or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance**.

*Picard v. St. Tammany Parish Hosp.*, **611 F.Supp.2d 608, 618 (E.D.La. 2009)**
The Americans with Disability Act places an affirmative duty on covered employers to reasonably accommodate the known mental and physical limitations of their employees. To make out a failure-to-accommodate claim, a plaintiff must show: (1) she is a qualified individual with a disability; (2) her employer knew of the disability and its consequential limitations on the plaintiff; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). When an employer is required by law to provide accommodation, its failure to do so is considered a prohibited form of discrimination. *Picard*, 611 F.Supp.2d at 618.

2**1**

## According to Section 504 of the Rehabilitation Act of 1973:

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against an otherwise qualified individual with a disability solely because of disability in any program or activity receiving federal financial assistance or under any program or activity conducted by an executive agency or the U.S. Postal Service. *Section 504 was the first federal civil rights law generally prohibiting discrimination against individuals with disabilities.* The concepts of Section 504 and its implementing regulations were used in crafting the Americans with Disabilities Act (ADA)3 in 1990. The Americans with Disabilities Act and Section 504 are, therefore, very similar and have some overlapping coverage also have several important distinctions.

Section 504 has been amended numerous times since its original enactment in 1973. The core requirement of the section is found in subsection (a). This subsection was amended by P.L. 95-602 which added the provisions regarding the regulations. **Section 504(a) currently states the following:**

(a) *No otherwise qualified individual with a disability in the United States*, as defined in section 705(20), shall, solely because other or his disability, be excluded from the participation in,

(b) **be denied the benefits of**, or **be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service**. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.

Title I of the ADA prohibits employment discrimination which is also prohibited discrimination by entities covered by Section 504. Enforcement of Title I of the ADA parallels that of

2̶1̶

Title VII of the Civil Rights Act of 1964 and includes the requirement that persons alleging discrimination file a charge with the EEOC. However, under Section 504 an employment discrimination complaint may be filed with the Office of Civil Rights for the agency that provided the federal financial assistance or the Department of Justice. **Administrative procedures do not have to be exhausted before filing suit in federal court.**

### According to the Americans with Disabilities Act:

Employers may have to provide a **"reasonable accommodation"** to enable an individual with a disability to meet a qualification standard that is job-related and consistent with business necessity or to perform the essential functions of her position. **A reasonable accommodation is any change in the work environment or in the way things are customarily done that enables an applicant or employee with a disability to enjoy equal employment opportunities**. *An employee generally has to request an accommodation but does not have to use the term "reasonable accommodation," or even "accommodation," to put the employer on notice. Rather, an employee only has to say that she requires the employer to provide her with an adjustment or change at work due to a medical condition.* An employer never has to provide an accommodation that would cause undue hardship, meaning significant difficulty or expense, which includes removing an essential function of the job.

### According to the U.S. Equal Employment Opportunity Commission:

**An employer should respond expeditiously** to a request for reasonable accommodation. If the **employer and the individual with a disability need to engage in an interactive process, this too should proceed as quickly as possible**.

### According to 29 CFR Ch. XIV:

**§ 1630.9 Not making reasonable accommodation.**

(a) It is unlawful for a covered entity not to make reasonable accommodation to the **known physical** or mental **limitations** of an otherwise qualified applicant or employee with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.

(b) It is unlawful for a covered entity to deny employment opportunities to an otherwise qualified job applicant or employee with a disability based on the need of such covered entity to make reasonable accommodation to such individual's physical or mental impairments.

(c) A covered entity shall not be excused from the requirements of this part because of any failure to receive technical assistance authorized by section 507 of the ADA, including any failure in the development or dissemination of any technical assistance manual authorized by that Act.

(d) An individual with a disability is not required to accept an accommodation, aid, service, opportunity, or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity, or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified.

(e) **A covered entity is required**, absent undue hardship, **to provide reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong (§ 1630.2(g)(1)(i)), or "record of" prong (§1630.2(g)(1)(ii)),**

but is not required to provide reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (§ 1630.2(g)(1)(iii)).

In closing, the State of Wisconsin Labor & Industry Review Commission failed to understand that Rheumatoid Arthritis is chronic/life-long medical condition; and that **a permanent restriction is a permanent restriction**. When a licensed physician writes No Exposure to Extreme Temperatures, No Run, No Climb, No Squat; **no means no**. When a licensed physician request an ergonomic workspace, voice recognition software, keep the employee's workspace close to washrooms (due to intermittent diarrhea), and a space heater for the employee's workspace; **employers do not subject an employee to a work environment without these items**. The Labor & Industry Review Commission was also selective in the information retrieved from the Independent Medical Examination. Fatigue was noted as a side effect of medication by the Labor & Industry Review Commission, but they disregarded the shortness of breath and intermittent diarrhea. Climbing stairs can exacerbate one's shortness of breath, but the Labor & Industry Review Commission clearly couldn't make the association. Obviously, the Ozaukee Unit did not have the required accommodations previously requested by the Complainant's physician; and the Complainant should not have been required to work in a work environment that violated a licensed physician's restrictions. The Labor & Industry Review Commission and the Wisconsin Department of Corrections had the necessary medical documentation from licensed physicians but chose to ignore it. These actions constitute violations of the U.S. Department of Justice Americans with Disabilities Act and the Rehabilitation Act of 1973. The Wisconsin Department of Corrections receives federal funding and is obligated comply with all federal statues in order to receive federal funding.

Submitted by:

Veronica King
Petitioner

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Veronica King**
**9518 34th Av**
**Kenosha, WI 53144**

**21-C-0704**

From: **Milwaukee Area Office**
**310 West Wisconsin Ave**
**Suite 500**
**Milwaukee, WI 53203**

| | |
|---|---|
| [ ] | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **26G-2017-00425** | **Adam J. Carvill,** **Investigator** | **(414) 662-3681** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman / Th*

3/16/2021

Enclosures(s)

**Julianne Bowman,**
**District Director**

*(Date Issued)*

cc: **Eric Muellenbach**
**STATE OF WI DOC**
**3099 E Washington Ave**
**P O Box 7925**
**Madison, WI 53707**

EEOC Form 161 (11/2020)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Veronica King**<br>**5518 34th Av**<br>**Kenosha, WI 53144** | From: | **Milwaukee Area Office**<br>**310 West Wisconsin Ave**<br>**Suite 500**<br>**Milwaukee, WI 53203** |
|---|---|---|---|

**21-C-0704**

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No | EEOC Representative<br>**Adam J. Carvill,**<br>**Investigator** | Telephone No. |
|---|---|---|
| **26G-2017-00976** | | **(414) 662-3681** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [X] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne bowman / Th*

**Julianne Bowman,**
**District Director**

3/16/2021

*(Date Issued)*

Enclosures(s)

cc: **Eric Muellenbach**
**STATE OF WI DOC**
**3099 E Washington Ave**
**P O Box 7925**
**Madison, WI 53707**