UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VERONICA KING,

      Plaintiff,

  v.                                 Case No. 21C0704

STATE OF WISCONSIN DEPARTMENT
OF CORRECTIONS, et al.,

      Defendants.

## AMENDED COMPLAINT

The Plaintiff, Veronica King, as, and for, an Amended Complaint against the Defendant, State of Wisconsin, Department of Corrections, alleges as follows:

### NATURE OF THE CASE

1. Plaintiff, Veronica King, alleges that Defendant, State of Wisconsin Department of Corrections, violated the Rehabilitation Act of 1973 by failing to accommodate Plaintiff's disabilities and discharging her from employment because of her disabilities and opposition to discrimination.

### JURISDICTION AND VENUE

2. Jurisdiction over Plaintiff's claims under the Rehabilitation Act of 1973 is conferred on this Court by 28 U.S.C. § 1343.

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. §1391, because the Defendant resides in the Eastern District of Wisconsin and the unlawful actions occurred in the Eastern District of Wisconsin.

### CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed.R.Civ.Pro., have been performed or have otherwise occurred.

**JURY DEMAND**

5. Plaintiff demands that her case be tried to a jury of her peers.

**PARTIES**

6. Plaintiff, Veronica King ("King"), is an adult who resides at 5518 34th Avenue, Kenosha, WI 53144.

7. Defendant, State of Wisconsin, Department of Corrections ("WDOC"), is a state agency formed under the laws of the State of Wisconsin, with its principal administrative offices located at 3099 East Washington Ave., Madison, WI 53704.

**OPERATIVE FACTS**

8. On July 12, 2010, King began her employment with WDOC as a Treatment Specialist 1 – AODA (Substance Abuse Counselor) at the Racine Correctional Institution.

9. The WDOC receives federal funding.

10. King held two licenses through the State of Wisconsin Department of Safety & Professional Services.

11. King has been licensed as a Social Worker since 1995,

12. King was licensed as a Substance Abuse Counselor-In Training from March 2010 to August 2012, when she became licensed as a Clinical Substance Abuse Counselor.

13. From July 2014 to February 2019, King was licensed as a Clinical Supervisor – In Training.

14. Since March 2020, King has been licensed as an Independent Clinical Supervisor, which is the highest licensure that a substance abuse professional can hold in the State of Wisconsin.

15. In May 2013, King received a State of WDOC Secretary SALUTE Award, which is one of the highest awards that can be achieved by a WDOC employee.

16. King performed her job duties to the reasonable expectations of the WDOC.

17. Prior to being diagnosed with Rheumatoid Arthritis ("RA"), King had never been disciplined by the WDOC.

18. King is an individual with a disability due to a physical impairment that substantially limits one or more major life activities; she has a record of this type of impairment; and, she is regarded as having such impairment.

19. The WDOC refused to cooperate with King's team of Board-certified Physicians who treated King for RA, deformed joints in the hands and feet/ankles, a dislocated right shoulder/rotator cuff tears, and an arthritic right hip.

20. In January 2013, King transferred to the Racine Youthful Offender Correctional Facility, and asked for a space heater as an accommodation for her RA. WDOC told King that space heaters were not allowed at the facility.

21. On October 2, 2013, King's treating physician, Dr. Chowdhery, MD, completed the WDOC FMLA and Medical Accommodation Request documents, specifically requesting the following:

- Decrease walking to office.
- Decrease unlocking/locking doors.
- Space heater in office as cold temperatures increase arthritis pain.
- Ergonomic assessment of workspace.

22. Dr. Chowdhery provided the WDOC with written notice that the side effects of her medications cause increased risk of infection, nausea, diarrhea, shortness of breath, and fatigue.

23. The WDOC failed to engage in an interactive process regarding these restrictions and accommodations for King.

24. To avoid having to work in a cold office with no space heater, King transferred to the Racine Correctional Institution as a Social Worker -Senior (AODA), which took effect on December 2, 2013.

25. From December 2, 2013 to December 15, 2017, King worked as a Social Worker – Senior (AODA) at the Racine Correctional Institution. During this four-year period, King's RA continued to worsen due to the WDOC's refusal to adhere to the restrictions and accommodations regarding King's disability.

26. On April 28, 2016, Warden Paul Kemper placed King on Paid Administrative Leave and ordered that she undergo an independent medical examination ("IME") after King's Rheumatologist requested additional restrictions.

27. On August 1, 2016, King was seen by Dr. Brian D. Harrison, MD, CIME, who was hired by the WDOC to perform the IME.

28. Dr. Harrison determined that King had permanent disabilities and recommended that King be returned to work with the same restrictions and accommodations put in place by King's healthcare providers, in addition to a motorized scooter for travel on the WDOC campus and computer time limited to 2 ½ hours per day.

29. Upset with the results of the IME, Warden Kemper sent King a letter on August 24, 2016, falsely stating that she was "unfit for duty".

30. On September 28, 2016, the WDOC settled King's five Discrimination Complaints filed with the Wisconsin Department of Workforce Development involving discriminatory treatment by Corrections Program Supervisor Christina Ettinger and Warden Kemper. The parties' Settlement Agreement required the WDOC to restore King's 185.5 hours of sick leave and provide a fair review of training opportunities.

31. On January 5, 2017, Dr. Chowdhery provided the WDOC with a written request that it provide King with self-adhesive flipchart paper to accommodate King's RA and shoulder condition. King made the same request for accommodation by submitting the WDOC request form.

32. The WDOC agreed to grant King's request for accommodation upon her successful completion of CBISA Teachbacks.

33. From February 9 to March 17, 2017, King was on FMLA Leave for a serious health condition concerning her RA and surgery to her right foot.

34. On March 20, 2017, King returned to work with 10 lb. lift, carry and pull restrictions.

35. On April 3, 2017, King successfully completed the CBISA Teachbacks but the WDOC refused to provide the self-adhesive flipchart paper accommodation as agreed.

36. On April 3, 2017, Ettinger compared King's group facilitation skills to those of an orangutan.

37. King reported the inflammatory racial slur to the WDOC Human Resources Director and the Deputy Warden Steven R. Johnson.

38. On April 18, 2017, King resumed facilitating substance abuse treatment groups.

5
Case 2:21-cv-00704-PP   Filed 12/17/21   Page 5 of 10   Document 19

39. King was forced to facilitate groups without the self-adhesive flipchart paper, and the whiteboards were never lowered to accommodate King's disability.

40. On May 8, 2017, Ettinger retaliated in response to King's opposition to discrimination, by conducting a phony Performance Evaluation of King that contained false and incomplete information.

41. King suffered intentional infliction and emotional distress due to the inflammatory racial slur and the WDOC's failure to take prompt remedial action.

42. On May 9, 2017, King received the self-adhesive flipchart paper but the WDOC refused to lower the whiteboard in response to her request for that accommodation.

43. From May 12 through June 7, 2017, the WDOC failed to take remedial action to stop King's co-worker, Marlo Harmon, from harassing King because of her disability by interfering with King's restrictions and accommodations.

44. On June 19, 2017, King submitted a Reasonable Accommodation Request requesting that four doors with doorknobs be switched to door handles to accommodate King's RA in both hands.

45. The WDOC agreed to switch the door knobs to door handles, but never did so.

46. On June 27, 2017, Dr. Joshua Gerthenson, MD completed a Department of Corrections Fitness for Duty Form, explaining that King was struggling to turn the door knobs to the ladies room due to the deformity of her right hand, and requested that doorknobs be changed to door handles so King would have access to the restroom to avoid accidents at work due to the side-effects of her medications.

47. The space between the large doorknob and the frame of the door to the ladies room was too narrow for an Individual with disabilities in the hand to turn without bumping the hand against the door frame. This architectural defect prevented an individual with disabilities affecting the hands from having access to facilities that were provided to non-disabled employees. The enlarged knuckles of King's right hand made it difficult for her to turn large doorknobs in tight spaces.

48. King could no longer report to work from July 5, 2017 to November 13, 2017, due to the WDOC's denial of her access to the ladies room and refusal to accommodate.

49. On July 19, 2017, Warden Kemper placed King on administrative leave with pay because of her disability and in retaliation for her opposition to discrimination.

50. Throughout King's medical leave she repeatedly renewed her requests for accommodation.

51. With the help of colleagues from across the state, AFSCME union members, other State of Wisconsin employees, and members of civil rights organizations, King gathered information regarding hundreds of ADA and OSHA violations in WDOC facilities throughout the State of Wisconsin.

52. On December 15, 2017, WDOC terminated King's employment because of her disability and opposition to discrimination.

53. WDOC knew or reasonably should have known about King's disability and her need for accommodation.

54. WDOC failed to engage in an interactive process to determine a reasonable accommodation for King.

55. WDOC refused to reasonably accommodate King's disabilities.

56. WDOC cannot demonstrate that the accommodations requested would have posed a hardship on its operation.

### COUNT I
### (Rehabilitation Act - Failure to Accommodate)

57. King repeats and realleges the allegations contained in ¶¶ 1 through 56 above, inclusive.

58. WDOC acted without regard to King's rights as guaranteed under the Rehabilitation Act of 1973, by, among other acts, discriminating against her in the terms and conditions of employment, by failing to provide reasonable accommodations for known disabilities, and by failing to engage in an interactive process with King regarding her disabilities.

59. The WDOC's acts were with malice and reckless disregard for King's federally protected civil rights.

60. As a result of the WDOC's actions, King has incurred a loss of wages and other benefits related to her employment as well as other pecuniary losses.

61. As a result of the WDOC's actions, King has incurred, and continues to incur, emotional and physical distress and suffering.

62. King has suffered irreparable injury and has no adequate remedy at law.

### COUNT II
### (Rehabilitation Act - Retaliation)

63. King repeats and realleges the allegations contained in ¶¶ 1 through 56 above, inclusive.

64. By the above acts of the WDOC, King was retaliated against for participating in EEO activity in violation of the Rehabilitation Act, whereby she has suffered and will continue to suffer both irreparable injury and compensable damage unless and until this Court grants

relief.

65. The WDOC's acts were with malice and reckless disregard for King's federally protected civil rights.

66. As a result of the WDOC's actions, King has incurred a loss of wages and other benefits related to her employment as well as other pecuniary losses.

67. As a result of the WDOC' actions, King has incurred, and continues to incur, emotional and physical distress and suffering.

68. King has suffered irreparable injury and has no adequate remedy at law.

## COUNT III
### (Rehabilitation Act - Termination)

69. King repeats and realleges the allegations contained in ¶¶ 1 through 56, above, inclusive.

70. By the above acts of the WDOC, King was terminated from her employment due to her disability and opposition to discrimination in violation of the Rehabilitation Act, whereby she has suffered and will continue to suffer both irreparable injury and compensable damage unless and until this Court grants relief.

71. The WDOC's acts were with malice and reckless disregard for King's federally protected civil rights.

72. As a result of the WDOC' actions, King has incurred a loss of wages and other benefits related to her employment as well as other pecuniary losses.

73. As a result of the WDOC' actions, King has incurred, and continues to incur, emotional and physical distress and suffering.

74. King has suffered irreparable injury and has no adequate remedy at law.

WHEREFORE Plaintiff demands relief as follows:

A. Judgment against the above-named Defendant awarding Plaintiff damages equal to the amount of wages, employment benefits, and other compensation denied or lost by reason of the Defendant's violations;

B. judgment against the above-named Defendant awarding Plaintiff compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, mental anguish, and medical expenses;

C. judgment against the above-named Defendant awarding Plaintiff punitive damages in an amount deemed sufficient by the trier of fact to punish and deter the Defendant from engaging in such unlawful conduct now and in the future;

D. judgment against the above-named Defendant awarding Plaintiff reinstatement and/or damages for monetary losses and expenses;

E. judgment against the above-named Defendant awarding Plaintiff costs, disbursements, prejudgment interest, actual attorney fees and expert witness fees incurred in prosecuting this claim, together with interest on said fees; and

F. such other relief as the Court deems just and equitable.

Dated this 17th day of December, 2021.

s/ Alan C. Olson
Alan C. Olson, SBN: 1008953
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com